United States District Court
Southern District of Texas
**ENTERED**
November 18, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Ronald Thomas, § | |
|    Petitioner, § | |
| § | |
| v. § | |
| § | Civil Action H-19-813 |
| Bobby Lumpkin, § | |
| Director, Texas Department of § | |
| Criminal Justice, Correctional § | |
| Institutions Division, § | |
|    Respondent. § | |

# Report and Recommendation

Ronald Thomas is serving life in prison for aggravated robbery. Thomas filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (D.E. 1.) Bobby Lumpkin argues that Thomas's petition lacks merit and should be dismissed. (D.E. 17.) The court recommends that Thomas's petition be dismissed with prejudice.

*1. Background Facts*

On February 17, 2014, two men robbed a GameStop in Houston, Texas. David Jourdane was working at the cash register at the time. Jordan Kerber, the GameStop manager, was on a conference call in the back office when he saw Jourdane walking toward the office with two masked men holding guns. Before hanging up the phone, Kerber quickly said "we're being robbed" into the receiver. A person on the call called police.

Police arrived on scene and chased the suspects into a nearby apartment complex. Police found Ronald Thomas hiding behind a trailer and arrested him. They did not immediately apprehend the second suspect. Two hours later, GameStop employees noticed a suspicious car parked outside of the store. None of the surrounding businesses were open, but the car was backed into a parking spot and

was left unlocked and running. Officers turned off the car and looked inside in hopes of identifying the owner. In the center console of the unlocked car, police found a wallet with Jonathan Galloway's driver's license. Next to the wallet were two cell phones, an iPhone and a Samsung. Police pressed the home button on the iPhone and saw that the background photo was of Thomas, whom they had arrested a few hours prior. The phones and wallet were seized, along with the car, and tagged for police inventory. While police were searching the car, Wilson Tarley arrived at the scene and told police that the car belonged to him. He explained that he lent the car to Jonathan Galloway and, after speaking with Galloway, came to pick it up.

One week later, a judge issued a search warrant for both phones based on an officer's affidavit. (D.E. 18-16 at 169–72.) The warrant permitted law enforcement to search and seize any photographs, text messages, call logs, saved contact information, and Global Positioning System records found on Thomas's iPhone and Galloway's Samsung. *Id.* at 169. An officer submitted the phones to the digital forensics lab where hundreds of pages of information were extracted from each phone. (D.E. 18-8 at 77–78.)

2. *State Court Pretrial Proceedings*

Two months later, on April 21, 2014, a grand jury indicted Thomas for the aggravated robbery of "Jourdane Russell." (D.E. 18-37 at 39.) On October 27, 2015, the State filed a Motion for Leave of Court to Amend the Indictment. (D.E. 18-41 at 3.) The amendment proposed changing the complainant's name from "Jourdane Russell" to "David Jourdane." The motion was granted. (D.E. 18-2 at 88.)

Galloway pleaded guilty to the aggravated robbery of Jordan Kerber. (D.E. 18-16 at 174–75.) In connection with his Waiver of Constitutional Rights, he also signed an Agreement to Stipulate and a Judicial Confession. *Id.* at 174–80. He confessed and stipulated that he committed the aggravated robbery "with the aid, encouragement and assistance of Ronald Thomas." *Id.* at 179.

### 3. *State Court Trial*

Thomas was tried in the 339th District Court of Harris County, Texas. A jury was impaneled on April 13, 2016. (D.E. 18-38 at 33.) During trial, the jury heard testimony from police officers, Wilson Tarley, Jordan Kerber, David Jourdane, and Thomas. They were shown surveillance video of the robbery. (D.E. 18-6 at 38–78.) Galloway did not testify.

Officer Vu testified that two minutes after receiving the call alerting him of the robbery, he saw two suspects in the GameStop parking lot, running toward the apartment complex. (D.E. 18-6 at 184.) Vu drove to the adjacent complex and saw Thomas walking "really fast" while looking nervous and out of breath. *Id.* at 187–88. Vu testified that he followed Thomas around a corner and found him leaning down behind a trailer. *Id.* at 189–92. Vu detained Thomas and took him back to the GameStop parking lot. *Id.* at 192–93.

Officer Lopez testified that he pursued the suspects but ultimately lost track of them. (D.E. 18-6 at 117–20.) After Thomas had been detained, Lopez identified Thomas as looking like one of the suspects he had chased. *Id.* at 136–37. Officer Lopez and Jordan Kerber both agreed that the clothes Thomas was detained in looked like those worn by a suspect in the surveillance video. *Id.* at 89–90, 138–39.

Officers also testified about the vehicle found at the scene. They testified that the unlocked car was backed into a parking spot and appeared to have been running for some time based on the amount of fluid that had pooled beneath it. (D.E. 18-6 at 196–98.) Officer Vu testified that he was looking for something to identify the owner of the abandoned vehicle when he found two phones and a wallet in the center console. *Id.* at 198. He pressed the center button on the iPhone and the background—a photograph of Thomas—appeared. *Id.* at 199. Vu testified that Wilson Tarley showed up while police searched the vehicle. *Id.* at 206. At the scene, Tarley told police that the vehicle was his and that he had lent it to Jonathan Galloway. (D.E. 18-8 at 24.) Although police had not apprehended Galloway, they found his

3

identification in the car and recognized his photo as the suspect that had evaded them. (D.E. 18-6 at 245–46.)

Tarley testified that on February 17, 2014, Galloway called Tarley and told Tarley "to go get [his] car" from the area where Galloway left it. (D.E. 18-8 at 21–23.) Upon further questioning, Tarley also testified that he remembered telling Officer Vu that Galloway called him and said "[m]e and J hit up this place, and they caught J, and I'm on foot[.]" *Id.* at 25.

During trial, Thomas's attorney argued a motion to suppress evidence from Thomas's iPhone that he had filed pretrial. Thomas's counsel argued that the search warrant affidavit lacked any factual information to demonstrate that evidence of the crime would be found on the seized iPhone and thus lacked probable cause. (D.E. 18-8 at 81–85.) The court denied the motion to suppress. *Id.* at 86. The State presented an excerpt of the iPhone records for the jury, including photographs of Thomas and Galloway together, as evidence of the codefendants' friendship. *Id.* at 87–88. It also presented an excerpt of the Samsung records, including copies of text messages exchanged between the two phones the day before the robbery, and copies of text messages from Thomas's iPhone, as evidence that Thomas and Galloway had planned the robbery. *Id.* at 89–92, 195–200.

Thomas testified on his own behalf. (D.E. 18-8 at 143–210; D.E. 18-9 at 19–28.) On cross-examination, the State asked Thomas if Galloway would be testifying in Thomas's defense since they were best friends. (D.E. 18-8 at 208.) When asked if Galloway would testify that Thomas was with him, committing the robbery, Thomas replied: "No. I think that you guys—well, I don't [know] if I can say this, but I think that the State made an offer to him in order to get him to not come testify." *Id.* ¶¶ 13–16. Following that testimony, Thomas's trial attorney offered Galloway's Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession into evidence. (D.E. 18-9 at 17; D.E. 18-16 at 174–80.)

In his closing argument, Thomas's trial attorney argued that Thomas did not take part in the robbery. (D.E. 18-9 at 29.) He told the

4

jury that if Thomas had taken part in the robbery, the State could have called Galloway as a witness to testify to the statements sworn in his stipulation. *Id.* at 32–34. Thomas's lawyer explained to the jury that if the defense had called Galloway as a witness, Galloway would have had to testify that Thomas committed the crime because that is what he stipulated. *Id.* at 33. Counsel argued that the State could charge Galloway with aggravated perjury if his testimony failed to match his sworn stipulation. *Id.*

Following three days of evidence, the jury returned a guilty verdict. (D.E. 18-3 at 46, 54; D.E. 18-38 at 33–34.) The jury sentenced Thomas to life confinement. (D.E. 18-3 at 54, 58.)

*4. Post-Trial Proceedings*

Thomas filed a direct appeal. *Id.* at 62. A new attorney was appointed. (D.E. 18-3 at 66.) On appeal, Thomas challenged the validity of the searches of his phone. (D.E. 18-17.) Specifically, Thomas argued that (1) turning Thomas's cell phone on without a warrant was a Fourth Amendment violation and the trial court should not have allowed Vu to testify about it and (2) the search warrant for Thomas's phone was not supported by probable cause and the evidence seized from the phone should have been excluded. *Id.* The Fourteenth Court of Appeals affirmed the trial court's judgment, concluding (1) that Thomas did not preserve his first issue for review and (2) that there was probable cause for the search warrant. (D.E. 18-20.) Thomas filed a petition for discretionary review in the Texas Court of Criminal Appeals. (D.E. 18-29.) The petition was refused and his motion for a rehearing was denied. (D.E. 18-1.)

Thomas filed a state application for a writ of habeas corpus with the trial court. (D.E. 18-35 at 6–51.) The trial court issued findings of fact and conclusions of law and recommended that the Texas Court of Criminal Appeals deny Thomas's request for relief. (D.E. 18-36 at 54–18-37 at 35.) The Texas Court of Criminal Appeals denied relief on the findings of the trial court, without issuing a written order. (D.E. 18-34.)

5

Thomas filed his federal petition for writ of habeas corpus under 28 U.S.C. § 2254 on February 25, 2019. (D.E. 1.)

5. *Standard of Review for § 2254 Cases*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal writ of habeas corpus is available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" the Supreme Court, or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court's factual findings are presumed correct, and the applicant bears the burden to overcome that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018). AEDPA requires the court to defer to the state habeas court's express and implicit findings of fact and conclusions of law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

6. *Ineffective assistance of counsel*

A. *Legal standard*

Ineffective assistance of counsel claims are reviewed to determine whether counsel's performance was both objectively deficient and actually prejudicial to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Gipson*, 985 F.2d 212, 215 (5th Cir. 1993). If the petitioner makes an insufficient showing on one of the components of the inquiry, the court need not address the other. *See Strickland*, 466 U.S. at 697.

6

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018). It is "all the more difficult" where, as here, a defendant challenges a merits denial of his *Strickland* claim under AEDPA. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Mejia*, 906 F.3d at 315. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 315 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

### i. Deficient Performance

Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In reviewing counsel's performance, courts must "be highly deferential," eliminate the "distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

"Defense counsel's strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Mejia*, 906 F.3d at 316 (internal citations omitted). "A court reviewing those choices is required not simply to give counsel the benefit of the doubt, but to affirmatively entertain the range of possible reasons he may have had for proceeding as he did." *Id.* (internal citations omitted). The Fifth Circuit has "explained that counsel is afforded particular leeway where a potential strategy carries double-edged consequences." *Id.* (internal citations omitted). "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 317. "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690).

*ii. Prejudice*

Under *Strickland*, prejudice is "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. It is not enough to show that errors had "some conceivable effect" on the outcome; rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. A court assessing prejudice "must consider the totality of the evidence before the judge or jury," because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695–96.

B. *Analysis*

Thomas asserts that his trial counsel rendered ineffective assistance by failing to:

- challenge the State's motion to amend the indictment;
- object to Thomas's arrest based on a lack of probable cause;
- move to suppress evidence seized from Thomas's phone because the search warrant affidavit that permitted the search included false information;
- object to the warrantless search and seizure of Thomas's iPhone at the scene;
- object to the State's cross-examination question about Galloway's absence from trial as a Confrontation Clause violation; and
- request accomplice instructions.

Thomas also asserts that his appellate counsel rendered ineffective assistance by failing to:

- raise a hearsay issue as to Tarley's testimony and
- raise an authentication issue as to the admitted cell phone evidence.

The state habeas court found that Thomas had not shown that either lawyer's "conduct fell below an objective standard of

8

reasonableness" or that "but for [the] alleged deficient conduct, there is a reasonable probability that the result of [the proceeding or appeal] would have been different." (D.E. 18-37 at 26 ¶¶ 1–2.) Thomas's ineffective assistance of counsel claims must be denied under AEDPA because he has not shown that the state habeas court's factual findings were unreasonable in light of the evidence presented or that its decision was contrary to or involved an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d).

### i. Trial Counsel
#### a. *Failure to challenge amendment to indictment*

Thomas argues that his trial attorney was deficient because he failed to object to the State's motion to amend the indictment. Thomas asserts that had his attorney objected to the amendment, he would not have been convicted.

The state habeas court found that the amendment was proper under state law. (D.E. 18-37 at 26 ¶ 3.) This court defers to the State court's characterization of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (collecting cases). Thus, Thomas failed to demonstrate that the trial court would have ruled in his favor had his counsel objected. Trial counsel was not required to make a fruitless objection. *See Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) (reiterating that the "failure to raise meritless objections is not ineffective lawyering") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)).

Thomas's claim does not merit federal habeas relief because he cannot show that his lawyer was deficient under *Strickland*.

#### b. *Failure to object to warrantless arrest*

Thomas argues that his trial attorney should have objected to Thomas's warrantless arrest because Officer Vu did not have probable cause to arrest him. Thomas asserts that if his attorney had challenged his arrest, the court would have suppressed related testimony, which would have weakened the case against him and would have "possibly" changed the jury's verdict. (D.E. 2-1 at 6.)

9

In Texas, warrantless arrests are permitted when an officer finds a suspect in a suspicious place under circumstances that reasonably show that the suspect committed a felony. Tex. Code Crim. Proc. Ann. art. 14.03(a)(1). The state habeas court determined that Thomas failed to show that his trial attorney was deficient because Officer Vu saw Thomas hiding behind a trailer, appearing nervous and out of breath, near the scene of the robbery right after the suspects ran off. (D.E. 18-37 at 5 ¶ 80, 28 ¶ 9.)

Thomas has not shown that the state habeas court's finding that Officer Vu had probable cause for arrest was unreasonable. (D.E. 18-6 at 187–93.) Therefore, objecting to Thomas's arrest would have been fruitless. Thomas's counsel was not deficient in failing to make a fruitless objection. *See Wood*, 503 F.3d at 413.

### c. *Failure to seek a* Franks *hearing to suppress cell phone evidence*

Thomas argues that his trial attorney failed to seek a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). Under *Franks*, a hearing shall be held if the defendant shows that a search warrant's probable cause is based solely on law enforcement's intentionally false statements. *Id.* at 155–56. In Thomas's federal petition, he directs the court to his state habeas petition, wherein he alleged that the affidavit supporting the search warrant for his iPhone contained lies about what Thomas was wearing upon arrest and which officer seized his abandoned iPhone. (D.E. 2 at 33; D.E. 18-35 at 17–18.)

The state habeas court determined that Thomas (1) failed to demonstrate that the trial court would have committed error in denying a motion to suppress based on the proposed arguments, and (2) "fail[ed] to establish that had [trial counsel] requested a *Franks* hearing, that the outcome of the hearing would have resulted in the trial court finding that the affidavit lacked probable cause." (D.E. 18-37 at 27 ¶ 6.) The state habeas court reasoned that (1) Thomas did not demonstrate the need for a *Franks* hearing and (2) even if the allegedly false information was redacted from the search warrant, Thomas did not show that the affidavit would have lacked probable

10

cause in light of the facts and circumstances under which the phone was found and seized. *Id.* at 3 ¶¶ 68–69.

A review of the record shows that the state habeas court's decision reflects a reasonable determination of the facts and the law. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. Thomas has not provided evidence of any intentionally false statements in the affidavit. His conclusory allegations are not enough to show the need for a *Franks* hearing. Thomas has not shown that officers intentionally falsified the affidavit, therefore counsel was not deficient for failing to file a *Franks* motion.

Additionally, even if the statements about Thomas's clothing and the identity of the officer that seized the iPhone were intentionally false, redaction of those statements would not alter the probable cause determination. The affidavit contained other facts that established probable cause for the phone's search and seizure:

- the iPhone was found in a "suspicious" vehicle that was unlocked and left running for an extended period of time;
- that vehicle was found near the scene of the aggravated robbery;
- at the scene, Tarley approached police and told them he had come to retrieve the car after Galloway told him where it was;
- Galloway told Tarley that he "hit a lick," which the officer knew was as "a street term for committing a robbery"; and
- based on the officer's training and experience, suspects often communicate through cell phones.

(D.E. 18-16 at 171–72.) Thomas has not shown that a *Franks* motion would have resulted in suppression of any evidence. He has not shown prejudice under *Strickland*.

11

> d. *Failure to object to the warrantless viewing of Thomas's iPhone's background*

Thomas argues that his trial attorney failed to object to the officers' viewing of his iPhone's background. Thomas argues that had his attorney properly objected to this warrantless search, the evidence seized from the iPhone would have been excluded, and the outcome of the trial would have been substantially affected.

The state habeas court determined that Thomas did not have standing to complain about the search of Tarley's vehicle, which is where the iPhone was found. (D.E. 18-37 at 27 ¶ 5.) The court explained that a motion to suppress would have been meritless and thus, trial counsel's performance was not deficient. *Id.* at 2 ¶ 58.

Thomas has not shown that this finding is unreasonable because he has not shown that he had any possessory interest in the car. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Thomas has not shown a Fourth Amendment right in the abandoned vehicle or its contents that his trial counsel should have raised.

Moreover, Thomas has not shown that he had a reasonable expectation of privacy in the iPhone that warranted Fourth Amendment protection. Thomas abandoned the iPhone in an unlocked vehicle in a public parking lot. The "personal right to Fourth Amendment protection of property against search and seizure is lost when that property is abandoned." *United States v. Edwards*, 441 F.2d 749, 754 (5th Cir. 1971) ("Defendant's right to Fourth Amendment protection came to an end when he abandoned his car to the police, on a public highway, with engine running, keys in the ignition, lights on, and fled on foot."). Because Thomas lost any Fourth Amendment rights in the iPhone when he abandoned it, any objection to its search would have been meritless. The "failure to raise meritless objections is not ineffective lawyering." *Wood*, 503 F.3d at 413 (quoting *Clark*, 19 F.3d at 966).

12

> e. *Failure to object to the State's cross-examination questions*

Thomas argues that the State's cross-examination questioning provoked an answer that violated his Confrontation Clause rights. The state habeas court determined that Thomas failed to demonstrate a deficiency because a prosecutor's question cannot invoke the Confrontation Clause and thus is not evidence. (D.E. 18-37 at 29 ¶ 14.) Further, the court noted, "the question did not warrant a response that contained a statement made by Mr. Galloway." *Id.*

A review of the record shows that the exchange in question supported the state habeas court's findings:

> Q: Now, is Jonathan Galloway coming to testify today?
> A: I have no idea who you guys are going to call.
> Q: Are you calling him to testify in your defense?
> A: I don't believe so.
> Q: Well, he's one of your best friends, right?
> A: Yes, ma'am.
> Q: Don't you think you should call him to testify to your innocence?
> A: Well, I'm skeptical about that because —
> Q: He would say you were there, wouldn't he?
> A: No. I think that you guys—well, I don't [sic] if I can say this, but I think that the State made an offer to him in order to get him to not come testify.

(D.E. 18-8 at 208 ¶¶ 3–16.)

The Confrontation Clause only applies to testimonial statements. *Crawford v. Washington*, 541 U.S. 36, 51–53 (2004). Testimonial statements are out-of-court statements that an objective witness makes with a reasonable belief that they may be used at a later trial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (quoting *Crawford*, 541 U.S. at 51–52). Often these statements are affidavits, depositions, confessions, prior testimony, and other pretrial statements. *Id.* The State did not ask Thomas to repeat any testimonial statements. The prosecutor's question appears to have been an attempt to provoke an admission from Thomas based on the evidence already presented in the State's case-in-chief showing that both Galloway and Thomas committed the robbery. The prosecutor

13

did not ask what Galloway said to police, but what he would say if called. Thomas has not shown his lawyer was deficient for failing to object under *Crawford*.

Construing Thomas's claim more broadly, however, the court can imagine objections to the prosecutor's line of questioning. But any objection, even if granted, would not change the outcome of the trial. There was ample evidence of Thomas's guilt. He was identified by witnesses, his phone was at the scene, his clothing was seen in the surveillance video, and he was found near the scene, sweating and hiding. Thomas has not shown that a successful objection to the above line of questioning would have had any impact on the jury's deliberations. Even without the subject questioning, the evidence was clear that Galloway robbed the store with Thomas.

### f. *Failure to request accomplice witness instruction*

Thomas argues that his trial attorney failed to request an accomplice witness instruction in the jury charge. The state habeas court determined that Thomas failed to show (1) that he was legally entitled to the instruction and (2) "that the lack of an accomplice witness instruction denied [Thomas] of an impartial trial in light of the other evidence linking [Thomas] to the aggravated robbery." (D.E. 18-37 at 30 ¶ 17, 31 ¶ 19.)

An accomplice witness instruction may be necessary when the State's case is based on uncorroborated accomplice witness testimony. *See* Tex. Code Crim. Proc. Ann. art 38.10; *United States v. Jones*, 673 F.2d 115, 119 (5th Cir. 1982). Because the State's case against Thomas was based on significant direct and circumstantial evidence, other than any statement by Galloway, the state habeas court's conclusion that Thomas was not entitled to the instruction is not unreasonable. Thus, counsel's performance was not deficient.

Moreover, Thomas's trial counsel declared that he did not request the instruction as part of his trial strategy, which the state habeas court determined to be reasonable. (D.E. 18-36 at 40 ¶ 4; D.E. 18-37 at 10 ¶ 122.) Counsel declared that he "did not want the jury to think the Court was 'elevating' Galloway to the status of a

14

witness" when Galloway had not testified. (D.E. 18-36 at 40 ¶ 4.) Part of this strategy was to show the jury that Galloway was unable to testify in Thomas's defense "because of the box he had been put in by the [State] in his plea papers." *Id.* Thomas's trial counsel explained this to the jury in his closing. (D.E. 18-9 at 32–34.)

A "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009) (quoting *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006)). Thomas has not shown that the state habeas court's determination of counsel's trial strategy is unreasonable. Other evidence linked Thomas to the robbery—Officer Vu's testimony, Officer Lopez's testimony, Tarley's testimony, and evidence seized from his iPhone. Thomas has not shown the prejudice required under *Strickland*.

### ii. Appellate Counsel
#### a. *Failure to argue that Tarley's testimony contained hearsay*

Thomas argues that his appellate attorney should have argued that Tarley's testimony describing his phone call with Galloway amounted to inadmissible hearsay. Thomas asserts that had his appellate attorney raised this issue, the Fourteenth Court of Appeals would have vacated Thomas's conviction because the inadmissible statements were the only evidence linking the vehicle to the robbery.

The state habeas court noted that Galloway's statements were "admissible hearsay statements because they were statements against penal interest." (D.E. 18-37 at 7 ¶ 95.) The court defers to the state habeas court's finding that Tarley's testimony was admissible. *See Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010) ("[F]ederal courts sitting in habeas do not review state courts' application of state evidence law."). In this case, the original trial court and the state habeas court both determined that the statements were admissible under Texas Rule of Evidence 803(24), which affords a hearsay

15

exception to statements against penal interest. (D.E. 18-8 at 12–13; D.E. 18-37 at 7 ¶ 95.) Therefore, Thomas's lawyer was not deficient.

Assuming that the Fourteenth Court of Appeals would have taken an opposite view of the trial court's evidence ruling, there still is no prejudice. The state habeas court determined that Thomas "fail[ed] to demonstrate that had [his lawyer] challenged this ruling that the outcome of his appeal would have been different." (D.E. 18-37 at 29 ¶ 13.) The record supports this finding. On direct appeal, the Fourteenth Court of Appeals laid out several other pieces of evidence that directly tied the vehicle to the robbery:

- "[t]he vehicle was found at the scene after the robbery and apparently had been running and left unlocked for a prolonged period of time";
- Tarley "reported that he had loaned the vehicle to Galloway"; and
- Galloway's identification was found inside the vehicle.

(D.E. 18-20 at 8.) Further, Officer Vu testified that he suspected the car was connected to the case before he spoke to Tarley, based on where it was found, the way it was parked, and evidence that it had been running for awhile. (D.E. 18-6 at 197–98.) Thomas has not shown that his appellate counsel's performance prejudiced him because he has not shown that, had counsel presented this argument, the judgment would have been reversed.

### b. *Failure to raise authentication issue as to electronic evidence*

Thomas argues that his appellate attorney should have challenged the trial court's admission of electronic evidence from his phone based on insufficient authentication. The state habeas court determined that Thomas did not show his appeal would have been successful on these grounds because Thomas "himself admitted to recognizing the cell phone number listed on the records as his, admitted that the various contacts contained in the record were consistent with contacts saved in his cell phone and that he recognized them as such, and the Facebook evidence admitted at trial bore his image." (D.E. 18-37 at 32 ¶ 25.) These facts are consistent with Officer

16

Mora's trial testimony and Thomas's testimony on cross-examination. (D.E. 18-8 at 67–71, 193–95.)

Thomas has not shown that, had his attorney included this argument on direct appeal, there was a substantial likelihood that the case's outcome would change.

Habeas relief should be denied.

7. Conclusion

The court recommends that Thomas's petition be denied with prejudice. Thomas has not met his threshold burden of demonstrating that the state habeas court's denial of these claims constituted an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). Thomas has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, the undersigned recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on November 18, 2020.

_____
Peter Bray
United States Magistrate Judge